**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MIDAS INTERNATIONAL CORPORATION and MIDAS REALTY CORPORATION,**<br><br>            **Plaintiffs,**<br><br>**v.**<br><br>**CRAIG CHESLEY and CHESLEYCO, INC.,**<br><br>            **Defendants.** | **Case No. 1:11-cv-8933** |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs, Midas International Corporation ("Midas International") and Midas Realty Corporation ("Midas Realty"), by their attorneys, for their Complaint for Injunctive Relief ("Complaint") against Defendants, Craig Chesley ("Chesley") and ChesleyCo, Inc., ("ChesleyCo") state as follows:

### Nature Of The Action

1.      This is an action to enforce leasehold options. Defendants formerly operated several Midas locations in New York pursuant to written franchise agreements. In order to protect the goodwill that Midas International developed at those locations and to ensure that those locations could remain Midas Shops after the termination or expiration of the franchise agreements governing those franchises, Defendants agreed that Midas Realty had the option to have the leases governing two of the premises assigned to Midas Realty upon termination or expiration of the franchise agreements and the option to lease the third premises. Defendants' franchise agreements were terminated in November 2011 based upon Defendants' failure to make the required payments under the agreements and failure to cure those financial defaults

when provided the opportunity to do so.  Despite the termination of the franchise agreements, Defendants refuse to assign the leases (or to lease the premises) to Midas Realty and surrender possession and control of the premises to Midas Realty.  Instead, and despite Midas Realty's lease options, Defendants have entered into a letter of intent to sell their business assets – including their leasehold interests – to a competitor of Midas.  Midas International and Midas Realty seek, among other things, an injunction enjoining that imminent sale.

<u>**Parties**</u>

2.     Midas International is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Itasca, Illinois.  Midas International and its affiliates are engaged in the business of operating, and granting franchises to qualified persons to operate, automotive specialty shops (known as "Midas Shops") which engage in the sale and installation of certain automotive products and the performance of certain related services. Midas International is the owner of, among other things, the trade name "Midas."

3.     Midas Realty is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Itasca, Illinois.  Midas Realty is a subsidiary of Midas International.   Midas Realty is engaged in the business of owning, leasing and managing real estate for the purpose of operating Midas Shops.

4.     ChesleyCo is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York.  ChesleyCo is a Midas franchisee, which formerly operated six (6) franchised Midas Shops in New York and continues to operate four (4) other franchised Midas Shops in New York.  Chesley is the President of ChesleyCo, and is a citizen and resident of New York.

**Jurisdiction And Venue**

5.      This Court also has original subject matter jurisdiction over this action under 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      Venue is proper in this Court under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

**The Midas System**

7.      Based upon years of experience, Midas International has developed and operates, and is the sole and exclusive owner of, a stringent and comprehensive system for the development, operation and maintenance of Midas Shops (the "Midas System") that is designed to ensure that Midas Shops and the services and products offered therein meet uniform, high quality standards.  The Midas System is also designed to protect Midas International's name, goodwill, and reputation.  As such, all Midas International franchise contracts require franchisees to comply with the Midas System in the operation of their Midas Shops.

8.      The Midas System is widely known and favorably recognized by consumers. Consumers choose Midas because of Midas' high reputation for, *inter alia,* quality, service, products, and warranties.  To protect the Midas System and the goodwill associated with the Midas System, Midas International requires its franchisees to adhere to Midas International's policies and procedures.  These policies and procedures include, without limitation, real estate policies.

**The Parties' Written Midas Franchise Agreements And Real Estate Option Agreements**

9.      Between March 2009 and September 2010, ChesleyCo entered into four (4) written Franchise and Trademark Agreements with Midas International (the "Franchise

Agreements"), pursuant to which Midas granted ChesleyCo franchise licenses to use the Midas System in connection with its operation of Midas Shops at the following locations:

      a.      755 Panorama Trail South, Penfield, New York  14625;

      b.      4900 Lake Road, Brockport, New York  14420; and

      c.      4438 Dewey Avenue, Greece, New York  14616.

True and correct copies of the Franchise Agreements are attached hereto as Exhibits A through C.

10.    Chesley unconditionally personally guaranteed all of ChesleyCo's obligations to Midas International under the Franchise Agreements as well as any other agreement between Midas International and ChesleyCo.  True and correct copies of the personal guaranties are attached hereto as Exhibits D through F.

11.    In entering into the Franchise Agreements, and in order to ensure that Midas had the option of retaining each location as a Midas Shop after termination or expiration of the Franchise Agreements, Midas International's policies and procedures required Defendants to execute real estate option agreements with Midas Realty, providing Midas Realty the option, upon the termination or expiration of the Franchise Agreements, to enter into a lease with Defendants (if Defendants owned the property) or to assume Defendants' lease (if Defendants leased the property from a third party).

12.    Defendants executed Conditional Assignments of Lease for their Midas Shops in Greece and Penfield.  True and correct copies of the Conditional Assignment of Lease for the Penfield franchise and the Conditional Assignment of Lease for the Greece franchise are attached hereto as Exhibits G and H, respectively.  The Conditional Assignment of Leases provide that if the Franchise Agreements expire or are terminated by either party, Defendants

shall surrender and deliver possession of the premises to Midas Realty upon ten (10) days written notice from Midas Realty.

13.     The previous franchisees of the Brockport Midas Shop owned the premises and facilities at that location.  On December 28, 1990, those previous franchisees executed an Optional Lease Agreement, pursuant to which they granted Midas Realty the right to lease the premises and the facility in the event the franchise agreement was terminated or expired.  A Memorandum of Optional Lease Agreement was recorded.  In or around February 2004, Defendants became the franchisee of the Brockport Midas Shop.  On February 17, 2004, Defendants executed an Acknowledgement of Optional Lease Agreement, pursuant to which they acknowledged that the Optional Lease was in full force and effect, and Defendants also acknowledged that if the franchise agreement was terminated or expired, Midas Realty could exercise its option to lease the premises.  Finally, in connection with the renewal of Defendants' franchise agreement governing the Brockport Midas Shop in September 2009, Defendants executed an Amendment of Optional Lease Agreement, in which they again reiterated that the Optional Lease Agreement remained in full force and effect.  True and correct copies of the Optional Lease Agreement, the Memorandum of Optional Lease Agreement, and the Amendment to Optional Lease Agreement are attached hereto as Exhibit I.

## The Termination Of The Franchise Agreements
## And Midas Realty's Exercise Of Its Real Estate Options

14.     Defendants failed to pay to Midas International the royalties due and owing to Midas International under the Franchise Agreements.  By separate Notices of Default dated October 4, 2011, Midas International advised Defendants that they were in default of their payment obligations under the Franchise Agreements.

15. The October 4, 2011 Notices of Default under the Franchise Agreements advised Defendants that if their defaults were not cured within thirty (30) days following their receipt of the Notices of Default, the Franchise Agreements would be subject to termination.

16. As of November 7, 2011, the defaults set forth in the Notices of Default had not been cured, and the cure period, as specified in the Notices of Default, had expired. Accordingly, by separate Notices of Termination dated November 7, 2010, Midas International terminated each Franchise Agreement. True and correct copies of the November 7, 2011 Notices of Termination are attached hereto as Exhibits J through L. The November 7, 2010 Notices of Termination advised Defendants that they were required to comply with the post-termination obligations under the Franchise Agreements.

17. On November 7, 2011, Midas Realty exercised its real estate options on Defendants' former Midas Shops in Brockport, Greece, and Penfield by providing Defendants with written notices that it was exercising its options to take over as the tenant, or to become the tenant, at those three locations. True and correct copies of the correspondence Midas Realty sent to Defendants exercising its real estate options are attached hereto as Exhibits M through O.

**<u>Defendants' Refusal To Assign Their Real Estate Interests And Imminent Sale</u>**

18. Notwithstanding the termination of the Franchise Agreements and Midas Realty's exercise of its lease options, Defendants have refused to assign the leases to Midas Realty (or, in the case of the Brockport Midas Shop, to lease to Midas Realty) and surrender possession of their former Midas Shops.

19. To the contrary, instead of surrendering possession of the premises of their former Midas Shops, Defendants are actively involved in negotiations to sell the assets of their formerly

franchised Midas Shops – including transferring their leasehold interests in those Shops – to a competitor of Midas.

20.     On December 14, 2011, Defendants executed a letter of intent to sell all of the assets of their three franchises (along with the assets of another one of Defendants' former Midas franchises in Rochester, New York) to Monro Muffler Brake, Inc. ("Monro Muffler").  A true and correct copy of the letter of intent is attached hereto as Exhibit P.  The letter of intent contemplates that Monro Muffler will assume Defendants' obligations under the lease agreements governing the Greece and Penfield locations, and will enter into a lease agreement with Defendants for the Brockport location because "a certain party affiliated with" ChesleyCo now owns the property where that former Midas Shop is located.

21.     The letter of intent also states that the closing of the transaction "would be January 7, 2012."

22.     If Defendants sell their former franchised Midas Shops and the related leasehold interests to a competitor of Midas such as Monro Muffler, Midas will be unable to retain those locations as Midas Shops and will lose the goodwill that Midas International has established at those locations.

23.     Midas International and Midas Realty have at all times complied with and fully performed all of their obligations under all of their agreements with Defendants.

24.     Paragraph 4 of the Conditional Assignment of Leases provides that Defendants will reimburse Midas for all costs and expenses, including attorneys' fees and costs, incurred by Midas in enforcing the Conditional Assignment of Leases.

## COUNT I

## BREACH OF CONTRACT

25.     Midas International and Midas Realty repeat and reallege ¶¶ 1 through 24 of their Complaint as and for this ¶ 25, as if fully set forth herein.

26.     Defendants have failed and refused to perform their obligations under the Conditional Assignment of Leases and Optional Lease Agreement to surrender possession of the buildings and premises of their former franchised Midas Shops.

27.     To the contrary, Defendants are actively attempting to sell their former franchised Midas Shops, including transferring their leasehold interests, to Monro Muffler, a competitor of Midas.

28.     Defendants' sale to Monro Muffler is imminent, as the transaction is scheduled to close on January 7, 2012, at the very latest.

29.     If Defendants sell their former franchised Midas Shops, including their real estate interests, to a competitor of Midas, Midas will be irreparably injured, including injury to its goodwill and reputation, as well as being deprived of its ability to utilize its property, resulting in lost revenues and profits and diminished goodwill.

## PRAYER FOR RELIEF

**WHEREFORE,** Midas International and Midas Realty respectfully pray for the following relief against Defendants:

A.      A temporary, preliminary, and permanent injunction enjoining Defendants, their agents, servants, and employees, and those people in active concert or participation with them, from selling or otherwise transferring any of their interests, including their real estate and leasehold interests, in their former franchised Midas Shops located in Penfield, Brockport, and

Greece, New York;

B.     A preliminary and permanent injunction ordering Defendants, their agents, servants and employees, and those people in active concert or participation with them, to immediately surrender possession of the premises and former franchised Midas Shops located at:

a.     755 Panorama Trail South, Penfield, New York  14625;

b.     4900 Lake Road, Brockport, New York  14420; and

c.     4438 Dewey Avenue, Greece, New York  14616.

C.     That Defendants be required to file with the Court and to serve upon Midas International's and Midas Realty's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

D.     An award of the costs and expenses, including reasonable attorneys' fees, incurred by Midas in connection with this action; and

E.     Such other and further relief as the Court deems just and proper.


**MIDAS INTERNATIONAL CORPORATION and MIDAS REALTY CORPORATION**

By:     s/ John A. Hughes                                      
        One of their attorneys


Norman M. Leon (#6239480)
John A. Hughes (#6275159)
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Phone:  (312) 368-4000
Facsimile:  (312) 236-7516

*Of Counsel*

John F. Dienelt
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC  20004
Phone:  (202) 799-4000
Facsimile:  (202) 799-5000