# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 8933 | **DATE** | 4/19/2012 |
| **CASE TITLE** | Midas Int'l Corp et al vs. Chesley et al | | |

**DOCKET ENTRY TEXT**

Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [18] is denied.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

 Before the Court is Defendants' Craig Chesley and ChesleyCo, Inc.'s Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court denies Defendants' motion.

### BACKGROUND

 Plaintiffs Midas International Corporation ("Midas International") and Midas Realty Corporation ("Midas Realty") (collectively, "Plaintiffs") are Delaware corporations that have their principal place of business in Itasca, Illinois. Midas International and its affiliates are engaged in the business of operating and granting franchises to operate automotive specialty shops, known as "Midas Shops," which engage in the sale of automotive products and related services. Midas Realty is a subsidiary of Midas International, and it owns, leases, and manages real estate for the purpose of operating Midas Shops. Defendant ChesleyCo, Inc. ("ChesleyCo") is a New York corporation with its principal place of business in New York. ChesleyCo formerly operated ten franchised Midas Shops in New York. Defendant Chesley, who resides in New York, is ChesleyCo's President.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

On December 16, 2011, Plaintiffs filed their Complaint against Defendants (R. 1), and on February 15, 2012, they filed their Amended Complaint and their Motion for a Preliminary Injunction. (R. 20, 22.) In their Amended Complaint, Plaintiffs assert four separate breach of contract claims, as well as claims for trademark infringement, unfair competition, and trademark dilution, all in violation of the Lanham Act. (*Id.*)

According to Plaintiffs' allegations, Defendant ChesleyCo entered into four written franchise and trademark agreements (the "Franchise Agreements") with Midas International. (R. 1, Compl. ¶ 18.) In those agreements, Midas International granted franchise licenses to ChesleyCo in connection with its operation of Midas Shops at (1) 755 Panorama Trail South, Penfield, New York (the "Penfield Shop"); (2) 834 East Main Street, Rochester, New York (the "East Main Shop"); (3) 4900 Lake Road, Brockport, New York (the "Brockport Shop"); and (4) 4438 Dewey Avenue, Greece, New York (the "Greece Shop"). *Id.* ChesleyCo later acquired two additional franchised Midas Shops–one located at 2780 West Henrietta Road, Rochester, New York (the "West Henrietta Shop") and one located at 586 East Main Street, Batavia, New York (the "Batavia Shop"). (*Id.*)

Plaintiffs allegedly terminated Defendants' Franchise Agreements in November 2011 because Defendants failed to make the required payments under those agreements. (*Id.* ¶¶ 1, 36.) Despite their obligations to assign the leases governing the Penfield, Greece, and Batavia Shops to Midas Realty (and, in the case of the Brockport Shop, to lease the property to Midas Realty) and surrender possession of their shops, Defendants have refused to do so. (*Id.* ¶¶ 1, 38.) Defendants have also entered into a letter of intent to sell their business assets, including their leasehold interests, to one of Midas's competitors. (*Id.* ¶¶ 1, 39-41.) Plaintiffs alleged that Defendants continue to use Midas International's trademarks in connection with the operation of their formerly-franchised shops, and they continue to operate competitive businesses at the same locations of the Greece, West Henrietta, East Main, and Penfield Shops in violation of their non-competition covenant. (*Id.* ¶¶ 2, 45-52, 81.) Plaintiffs further allege that Defendants have failed and refused to take the necessary steps to transfer and assign to Midas International the telephone numbers they used at their shops. (*Id.* ¶¶ 79-80.)

On February 10, 2012, Defendants filed a motion to transfer venue to the United States District Court for the Western District of New York pursuant to 28 U.S.C. § 1404(a). (R. 18.) The motion is fully briefed and ripe for ruling.

## LEGAL STANDARD

Pursuant to § 1404(a), a district court may transfer a civil action "'for the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought.'" *Ace Hardware Int'l Holdings, Ltd. v. Masso Expo Corp.*, No. 11-cv-3928, 2011 WL 5077686, at *5 (N.D. Ill. Oct. 25, 2011) (quoting 28 U.S.C. § 1404(a)). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to a 'case-by-case consideration of convenience and fairness.'" *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). A transfer under § 1404(a) is appropriate if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Methode Elecs., Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903, 907 (N.D. Ill. 2009) (citation omitted). The moving party bears the burden of establishing these three factors. *See Ace Hardware*, 2011 WL 5077686, at *5 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) and *Tri3 Enters., LLC v. Aetna, Inc.*, No. 11 C 3253, 2011 WL 2550736, at *1 (N.D. Ill. June 24, 2011)). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219; *see also Research Automation*, 626 F.3d at 977 (Section 1404(a) gives district courts discretion to adjudicate motions to transfer on a case-by-case consideration of convenience and fairness).

## ANALYSIS

**I.     Venue is Proper in This District and in the Western District of New York**

Defendants reside in the Western District of New York, so venue is proper in that district. *See* 28 U.S.C. § 1391(b)(1) (2011). Plaintiffs argue that because a substantial part of the events or omissions giving rise to their claims occurred in this District, venue is also proper in the Northern District of Illinois. *Id.* § 1391(b)(2). To establish venue, Plaintiffs do not need to establish that a majority of the events took place in the forum district–rather, they "need only demonstrate that a 'substantial part' of the events or omissions giving rise to the claim occurred" there. *See Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004) (citing *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001)). Plaintiffs have met this burden because they allege that they suffered injury in this District as a result of Defendants' alleged trademark infringement, unfair competition, and breach of contract. *See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 411 (7th Cir. 1994) ("the state in which the injury occurs is the state in which the tort occurs"); *Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F. Supp. 766, 769 (N.D. Ill. 1998) (venue is proper in the district where the plaintiff's alleged intellectual property injury occurred). Therefore, venue is proper in both the transferor and transferee districts.[1]

**II.    Transfer Will Not Serve the Convenience of the Parties and Promote the Interests of Justice**

In making the determination of whether transfer of this case to the Western District of New York will serve the convenience of the parties and witnesses and promote the interests of justice, courts consider both private and public interests. *Tri3 Enters.*, 2011 WL 2550736, at *1 (citing *Nalco Co. v. Envt'l Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010) and *Methode Elec., Inc. v. Delphi Auto. Sys., LLC*, 639 F. Supp. 2d 903, 907 (N.D. Ill. 2009)). The private interests include: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience to the witnesses and parties." *Id.* (citing *Research Automation*, 626 F.3d at 978 and *Nalco*, 694 F. Supp. 2d at 998). The public interest factors include the congestions of the respective court dockets, prospects for a speedy trial, the respective desirability of resolving controversies in each locale, and the court's familiarity with the applicable law. *See Research Automation*, 626 F.3d at 978. "Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for another party." *Schwarz*, 317 F. Supp. 2d at 835.

### A.    Private interest factors

The first private interest factor –Plaintiffs' choice of forum–weighs against transfer given that Plaintiffs' principal places of business are located in this District. A "'plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), particularly where it is also the plaintiff's home forum.'" *Harris v. comStore, Inc.*, No. 11 C 5807, --- F. Supp.2d ----, 2011 WL 4738357, at *3 (N.D. Ill. Oct. 7, 2011) (quoting *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995)). Moreover, "a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor.'" *Id.*; *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)). Defendants argue that "there were no significant contacts in Illinois with the transactions or contacts involved in this suit." (R. 18, Defs.' Mot. at 2.) This is not true, however, because Plaintiffs' alleged

---

[1] Although Defendants assert that they do not have minimum contacts with Illinois, they do not argue that this Court cannot exercise personal jurisdiction over them.

place of injury is Illinois. *See Indianapolis Colts*, 34 F. 3d at 411-12 (injury caused by alleged trademark infringement would be felt by the plaintiff in its home state); *Sunrise Bidders, Inc. v. GoDaddy Grp., Inc*., No. 09 C 2123, 2011 WL 1357516, at *2 (N.D. Ill. Apr. 11, 2011) (where infringing activity occurred in transferee forum and the plaintiff incurred injury from that activity in the transferor forum, the court deferred to the plaintiff's choice of forum).

The second private interest factor–situs of material events–is neutral. Although the infringing activity occurred in New York, Plaintiffs' injury, as noted above, occurred in Illinois.
"[A] substantial part of the events triggering trademark infringement may occur both in the district where the infringer is located and [the district] where the trademark owner is located and confusion is likely to occur." *Sunrise Bidders*, 2011 WL 1357516 at *2 (quoting *Nw. Corp. v. Gabriel Mfg. Co.*, No. 96 C 2004, 1996 WL 73622, at *5 (N.D. Ill. Feb. 16, 1996)). Moreover, Plaintiffs' claims for breach of contract allege that Defendants failed to submit payments to them in Illinois. *Cf. Ace Int'l Holdings*, 2011 WL 5077686, at *13 (Illinois had significant relationship with material events leading to the litigation where the defendants allegedly failed to submit payments owed to an Illinois corporate resident). The sources of proof factor is also neutral given that Plaintiffs' documents are located in Illinois and Defendants' documents are likely located in New York. Plaintiffs submit, and Defendants do not dispute, that this is not likely to be a document-intensive case.

The convenience of the parties and witnesses factor is also likewise neutral. "[C]ourts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation*, 626 F.3d at 978. Because party witnesses normally appear voluntarily, the "convenience of non-party witnesses is more significant than party witnesses." *Tri3 Enters*., 2011 WL 2550736, at *2 (citations omitted). It would undoubtedly be more convenient for Defendants to litigate in New York because Defendants' witnesses are located in New York. By the same token, it is more convenient for Plaintiffs to litigate in Illinois because their witnesses are either located in Illinois or are subject to appear in Illinois by virtue of their employment relationship with Plaintiffs.

Defendants argue that non-party landlords of the properties at issue reside in New York. As Plaintiffs point out, however, Defendants do not explain what testimony the landlords will offer or why such testimony is important to the case. *See Sunrise Bidders*, 2011 WL 1357516 at *3 ("The movant bears the burden of establishing what the witness's testimony will be and how vital that testimony will be to the case.") (citing *Rohde v. Cent. R.R. of Indiana*, 951 F. Supp. 746, 748 (N.D. Ill. 1997)).[2] Defendants also argue that Plaintiffs seek to enjoin them from selling their businesses at the locations in question to a non-party, Monroe Muffler, which resides in New York, and that Monroe Muffler "may be unable to testify at trial if held in Illinois." (R. 35, Defs.' Reply at 4.) Again, however, Defendants do not sufficiently explain why testimony from Monroe Muffler is relevant to this case, given that Plaintiffs are seeking to enjoin Defendants, not Monroe Muffler, from selling the businesses. Finally, Defendants assert that other non-party witnesses, including Shawn Kornacki and Shawn Phuckhaber, reside in New York and "can testify to material issues such as when the Midas signs were removed, who removed the signs and any applicable conditions related to the removal of these signs." (*Id.* at 5.) Defendants do not explain how such testimony is necessary or even relevant to resolution of the issues in this case. Because transferring this case to the Western District of New York "would merely shift the inconvenience from one party to another," transfer is not warranted. *See Central States, Se. & Sw. Areas Pension Fund v. Ehlers Dist. Inc*., No. 11 C 2691, 2012 WL 581246, at *3 (N.D. Ill. Feb. 22, 2012) (citation omitted).

---

[2] In any event, the landlord for the Brockport Shop appears to be either owned or controlled by Defendant Chesley. *See* R. 27-1, ¶ 11 and Exhibit 1.

Although Defendants assert that Plaintiffs are better situated financially than Defendants to litigate this case in another forum, Defendants failed to offer evidence to show that they cannot afford to litigate the case in the Northern District of Illinois. "A party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his or her finances." *See Sunrise Bidders*, 2011 WL 1357516 at *3 (concluding that both parties had the financial wherewithal to litigate in either forum where neither party submitted any information regarding its financial inability to litigate in another judicial district) (citation omitted).

Defendants reliance on *Allied Van Lines v. Aaron Transfer & Storage*, 200 F. Supp. 2d 941 (N.D. Ill. 2002) in support of their argument that the Court should transfer the case because of the parties' respective financial positions is unpersuasive. Although the court in *Allied* found that the plaintiff, a national corporation, was better able to bear the burden of litigating outside of its home forum, the court did not find that factor dispositive. Indeed, several other factors in that case favored transfer, including, "most significantly," that personal jurisdiction over the defendants in Illinois was "vigorously disputed and the subject of a motion to dismiss." *Id*. at 948. Given that the *Allied* court had doubts about its ability to exercise personal jurisdiction over the defendants, it found that "transferring the case . . . will avoid the contentious personal jurisdiction issue in this Court and [will] conserve judicial resources." *Id.*

### B.    Public interest factors

Public interest factors for the Court's consideration include the congestions of the respective court dockets, prospects for a speedy trial, the respective desirability of resolving controversies in each locale, and the court's familiarity with the applicable law. *See Research Automation*, 626 F.3d at 978.[3]

Plaintiffs offer uncontradicted evidence weighing against transfer with respect to the first two factors of the public interest analysis–the congestions of the respective court dockets and the prospects for a speedy trial. As Plaintiffs identify, the median time from filing to disposition for a civil case in the Northern District of Illinois in 2011 was 6.6 months, compared to 9.2 months in the Western District of New York. *See* R. 27-3, Judicial Caseload Profiles as of September 30, 2011. The median time from filing to trial in the Northern District of Illinois was 28.4 months in 2011, and it was 55.7 months in the Western District of New York in 2010.[4] Additionally, the percentage of cases that are three years old or more in the Northern District of Illinois is markedly less than in the Western District of New York (12.7% versus 17.6%). Therefore, the first two public interest factors weigh against transfer.

The familiarity with the applicable law factor is neutral. Although the Franchise Agreements contain choice of law provisions providing that New York law applies to the parties' dispute, Plaintiffs have asserted several federal law claims in addition to their breach of contract claims. Federal district courts in different forums

---

[3] The parties do not submit arguments regarding the respective desirability of resolving the controversy in each locale. Nonetheless, this factor is neutral. "Illinois has a strong interest in adjudicating injuries to the intellectual property rights of businesses that operate in this state." *Sunrise Bidders*, 2011 WL 1357516 at *4 (quoting *School Stuff, Inc., v. School Stuff, Inc*., No. 00 C 5593, 2001 WL 558050, at *6 (N.D. Ill. May 21, 2001)). The alleged infringing activity, however, occurred in New York, and the leases at issue are located in New York. Therefore, the transferor court also has an interest in resolving the controversy.

[4] The figure for median time from filing to trial in the Western District of New York for the year 2011 is not available. *See* R. 27-3.

are presumed equally capable and experienced with respect matters of federal law. *See Lewis v. Grote Indus., Inc.*, --- F. Supp. 2d ----, No. 11 C 7069, 2012 WL 234356, at *4 n.2 (N.D. Ill. Jan. 24, 2012) (citing cases). This Court is also capable of applying New York contract law to Plaintiffs' contract claims. *Cf. CSM Fastener Prods. Co. v. E.J. Peck, Inc.*, No. 11 C 8307, 2012 WL 502959, at *5 (N.D. Ill. Feb. 15, 2012) (transfer not warranted where parties' agreement called for the application of Michigan law because "there is no reason to believe that there is anything peculiar about contract law in Michigan that would make it more difficult for a judge in this district to apply").

## CONCLUSION

As set forth above, transfer of this case to the Western District of New York would not serve the convenience of the parties and witnesses and promote the interests of justice. Accordingly, the Court denies Defendants' motion to transfer pursuant to § 1404(a).